UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTIN SMITH,

     Plaintiff,

vs.

WALLACE E. SMITH, et al.,

     Defendant.

_____/

Case No. 19-10330

HON. MARK A. GOLDSMITH

**OPINION & ORDER**
**(1) GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT (Dkt. 47); (2) OVERRULING DEFENDANTS' OBJECTIONS TO THE DISCOVERY MASTER'S REPORT AND RECOMMENDATION (Dkt. 69); (3) ACCEPTING THE RECOMMENDATION OF THE DISCOVERY MASTER (Dkt. 67); (4) DENYING DEFENDANTS' MOTION FOR A PROTECTIVE ORDER (Dkt. 48); (5) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S FIRST MOTION TO COMPEL (Dkt. 60); AND (6) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S SECOND MOTION TO COMPEL (Dkt. 71)**

This matter is before the Court on Plaintiff Martin Smith's motion for leave to file a second

amended complaint (Dkt. 47) and on three discovery motions filed by Martin and Defendants

Wallace E. Smith, Joan E. Smith, Amanda Menchinger, and E&E Manufacturing Corporation, Inc.

("E&E").  Two of the discovery motions, Defendants' motion for a protective order (Dkt. 48) and

Martin's first motion to compel (Dkt. 60), were referred to the discovery master for a Report and

Recommendation ("R&R").  The discovery master issued an R&R recommending that the Court

require Defendants to produce certain categories of information (Dkt. 67).  Defendants filed

objections to the R&R (Dkt. 69), and Martin filed a response (Dkt. 72).  The third discovery

motion, Martin's second motion to compel (Dkt. 71), was not referred to the discovery master.[1]

For the reasons discussed below, the Court (1) grants Martin's motion for leave to file a

second amended complaint; (2) overrules Defendants' objections to the R&R; (3) accepts the

recommendation of the discovery master; (4) denies Defendants' motion for a protective order;

(5) grants in part and denies in part Martin's first motion to compel; and (6) grants in part and

denies in part Martin's second motion to compel.

### I.   BACKGROUND

The present action involves a dispute between the shareholders of E&E, a closely held

corporation.  Martin alleges that he is a minority shareholder who owns approximately 48% of

E&E's outstanding stock, while his brother Wallace and Wallace's wife, Joan, are majority

shareholders and sole directors of E&E, who together own the remaining 52% of the company

stock.  Am. Compl. ¶¶ 2-3, 44, 48-49 (Dkt. 20).  Martin claims that between 2012 and 2017,

Wallace and Joan, acting as controlling shareholders, approved their own excessive compensation

while simultaneously refusing to issue dividends despite E&E's substantial profits.  Id. ¶¶ 1, 4-10,

99.  Thus, Martin claims he has received no compensation for his minority ownership, while

Wallace, Joan, and their immediate family have profited handsomely by collecting yearly salaries

and discretionary bonuses in the millions of dollars.  Id. ¶¶ 5, 61-62, 86.  Accordingly, Martin

brings claims for shareholder oppression under Michigan Compiled Laws ("MCL") § 450.1489

(Count I), breach of fiduciary duties under MCL § 450.1541a (Count II), and a shareholder action

---

[1] Martin's motion for leave to file a second amended complaint and his second motion to compel
are fully briefed.  Responses were filed in opposition to Defendants' motion for a protective order
and to Martin's first motion to compel; however, no replies were filed in connection with either
motion.  Because oral argument will not assist in the decisional process, the motions will be
decided based on the parties' briefing.  See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b).

under MCL § 600.3605 (Count III). Along with other relief, Martin seeks a court-ordered buyout of his shares.

Currently pending before the Court, as described above, are Martin's motion to file a second amended complaint and three discovery motions. The Court addresses each of these motions in turn.

## II. DISCUSSION

### A. Motion for Leave to File Second Amended Complaint

Unless a party is entitled to amend as of right, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Federal Rules favor reaching decisions on the merits. Foman v. Davis, 371 U.S. 178, 182 (1962). To that end, courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" Foman, 371 U.S. at 182.

Martin seeks leave to file a second amended complaint in order to expand his factual allegations and to add as defendants JAW Trading Company, Inc. ("JAW Trading") and E&E Manufacturing of Tennessee, LLC ("E&E of Tennessee"). Pl. Mot. to Amend at 1-2. JAW Trading is owned and controlled by Wallace, Joan, and their two daughters, while E&E of Tennessee is a wholly-owned subsidiary of E&E. Entity Chart, Ex. C to Defs. Resp. to Pl. Mot. to Amend (Dkt. 51-4). Thus, by virtue of their roles as majority shareholders and directors of

E&E, Wallace and Joan exert control over E&E of Tennessee.  Second Amended Complaint ("SAC"), Ex. 1 to Pl. Mot. to Amend, ¶ 95 (Dkt. 47-2).

Martin seeks to add these two new parties because they, along with other business entities (the "Business Entities") owned or controlled by Wallace, Joan, and their family members, were allegedly used in furtherance of the current Defendants' oppressive scheme against Martin.  Pl. Mot. to Amend at 10; SAC ¶ 6.[2]  According to the SAC, Wallace and Joan have engaged in self-dealing by leveraging E&E's assets for the benefit of the Business Entities and by causing E&E and E&E of Tennessee to enter into detrimental business transactions with JAW Trading and the Business Entities.  Id. ¶¶ 7, 14, 96, 113-114, 117-118.  For example, Martin alleges that the JAW Smith Entities own real property obtained by leveraging collateral owned by E&E.  Id. ¶ 112.  The JAW Smith Entities purportedly lease these properties at excessive rates to E&E and E&E of Tennessee, thus generating an income stream to the JAW Smith Entities and, consequently, to Wallace, Joan, and their family members.  Id. ¶¶ 8, 14, 113.

Defendants oppose Martin's motion, arguing that the proposed amendments would prove futile on three grounds.  The Court disagrees.

First, Defendants contend that the formation of all but one of the Business Entities described above occurred outside the limitations period.  Defs. Resp. to Mot. to Am. at 10-11 (Dkt. 51).  But Martin's allegations go well beyond the formation of the Business Entities.  As described

---

[2] The Business Entities include the following enterprises: JAW Smith, LLC; JAW Smith II, LLC; JAW Smith III, LLC; JAW Smith IV, LLC; JAW Smith V, LLC; Globe Tech, LLC ("Globe Tech"); and Die Tech Sp. Zoo ("Die Tech"), a Polish company.  See generally SAC.  The five JAW Smith limited liability companies (collectively, the "JAW Smith Entities") are owned by Wallace, Joan, and their two daughters.  Entity Chart.  Globe Tech and Die Tech are both wholly owned by JAW Trading.  Id.  E&E's alleged transactions with the Business Entities forms the basis of Martin's new factual allegations in the SAC; however, Martin does not seek to add the Business Entities as parties.

above, Martin alleges that certain post-formation transactions between E&E and JAW Trading or

E&E and the Business Entities constitute self-dealing.   As Martin argues, his shareholder

oppression claim is not premised on acts predating the statute of limitations—and any reference in

his proposed complaint to conduct occurring before the statute of limitations simply provides

context evidencing Defendants' alleged intent to oppress.  Def. Reply at 3 n.3 (Dkt. 58).[3]

Second, Defendants contend that Martin is unable to establish that they fraudulently

concealed the formation of the Business Entities or the acquisition of real property, as these events

are matters of public record.  Defs. Resp. to Mot. to Am. at 11-15.  Defendants further argue that

Martin is unable to establish that they deceitfully intended to conceal information from him, as the

evidence demonstrates that they dealt with Martin openly and in good faith.  Id.  Defendants

maintain that they shared E&E's annual financial reports with Martin, discussed E&E's financial

performance with Martin's attorney, and supplied any information requested by Martin's attorney.

Id. (citing William Heritage Aff., Ex. B to Defs. Resp. to Mot. to Amend, ¶¶ 6, 9 (Dkt. 51-3)).

Again, Martin is correct that his factual allegations go beyond the formation of the Business

Entities.   Martin claims that Defendants concealed their use of E&E's assets as collateral in

facilitating the purchase of real property by the JAW Smith Entities, as well as the terms of certain

transactions between E&E and JAW Trading or E&E and the Business Entities.  SAC ¶¶ 130-131.

Although Wallace and Joan shared E&E's annual financial reports with Martin, he alleges that

these reports were incomplete and excluded endnotes providing necessary context to the financial

data.  Id.  There is no indication, nor do Defendants argue, that Martin was provided with the

---

[3] Defendants have filed a dispositive motion relating to the statute of limitations applicable to all three of Martin's claims.  See Defs. Am. Mot. for Partial Dismissal (Dkt. 75).  Therefore, what conduct may be litigated in this action may be refined when the Court determines the appropriate limitations periods in connection with that motion.

details of the transactions between E&E and JAW Trading or E&E and the Business Entities. Additionally, Martin adequately pleads deceitful intent insofar as he alleges that the challenged transactions were deliberately concealed from him because Wallace, Joan, and their children "siphoned millions of dollars out of E&E and leveraged E&E's assets for their own personal benefit." SAC ¶ 132. It is clear that whether Defendants deceitfully concealed information relating to the alleged self-dealing presents a number of fact-intensive issues, which are not appropriately resolved on a motion for leave to amend. See Spigno v. Precision Pipeline, LLC, 59 F. Supp. 3d 831, 835 (E.D. Mich. 2014) ("In assessing the alleged futility of a proposed amendment, the focus is on whether the allegations in the amended complaint could withstand a motion to dismiss, not the whether the plaintiff will be able to support the allegations with proofs.").

Third, Defendants argue in cursory fashion that the new defendants named in the SAC— JAW Trading and E&E of Tennessee—owed no duty to Martin and that Martin's claims must proceed derivatively and not directly. Defs. Resp. to Mot. to Am. at 15-16. However, these arguments are not adequately developed in the present briefing and would be more appropriately considered in connection with a dispositive motion. See McPherson v. Kelsey, 125 F.3d 989, 995-996 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (citation and marks omitted)).

Accordingly, the Court grants Martin's motion for leave to file a second amended complaint. The Court further grants Martin's request to extend fact and expert discovery in connection with these new allegations for sixty days following issuance of this Opinion.

**B. Objections to the R&R**

Next, the Court turns to the motions referred to the discovery master and to Defendants' objections to the R&R.  When considering objections to a discovery master's R&R, the Court reviews findings of fact and questions of law de novo, and rulings on procedural matters for an abuse of discretion.  Fed. R. Civ. P. 53(f)(3)-(5).

With respect to Defendants' motion for a protective order, the parties resolved this motion except for Defendants' objections to Interrogatory 1 and Requests for Production 6, 9, and 30.  See Memo. to Disc. Master, Ex. A to Defs. Resp. to Pl. Mot. to Compel (Dkt. 66-2).  These discovery requests seek information relating to dividends and distributions issued by JAW Trading or the Business Entities since 2013; agreements executed between Defendants and any third party relating to the acquisition of certain real property; an agreement between E&E of Tennessee and one of the JAW Smith Entities regarding tax relief in connection with certain real property; and appraisals obtained by E&E or E&E of Tennessee in connection with a February 8, 2013 credit agreement.  Pl. Sixth Set of Disc. Requests at 7, 9, 15 (Dkt. 48-5).

The discovery master ordered Defendants to produce responsive information to the extent that it was created or in effect on or after February 4, 2013—the relevant time period for discovery, as previously determined by the Court.  R&R at 3-4 (citing 8/4/19 Order (Dkt. 43)).  Defendants do not advance any objections to this portion of the R&R, and the Court agrees with and adopts the discovery master's recommendation.  The Court declines to strike these discovery requests and, therefore, denies Defendants' motion for a protective order.

With respect to Martin's first motion to compel, the parties resolved this motion except for Defendants' objections to producing Wallace and Joan's personal tax returns from 2013 through 2015 and certain information in E&E's general ledgers.  See Memo. to Disc. Master.  The

discovery master ordered Wallace and Joan to produce their personal tax returns for these years but provided that they may redact all information "except for compensation related information with respect to E&E or the related entities."[4]   R&R at 5-6.   The discovery master also ordered production of certain information from E&E's general ledger relating to the period since February 4, 2013, as this information is relevant to a valuation of E&E.   Id. at 6.

Defendants filed two objections to this portion of the R&R.   First, they contend that Wallace and Joan's compensation from E&E, JAW Trading, and the Business Entities is discoverable from sources other than their personal tax returns.   Defs. Obj. to R&R at 1-3 (Dkt. 69).   Specifically, Defendants point to a sealed exhibit produced in discovery that purportedly summarizes Wallace's compensation from E&E between 2013 through 2018.[5]   See E&E Bonus Analysis, Ex. A to Defs. Obj. to R&R (Dkt. 70).   Yet, as argued by Martin, this document reflects only Wallace's compensation from E&E but does not reflect Joan's income or Wallace's net income from JAW Trading or the Business Entities.   See Pl. Resp. to Defs. Obj. to R&R at 2 (Dkt. 72).   Further, the discovery master noted that Martin reported inconsistencies in the produced documents relating to Wallace's and Joan's compensation.   R&R at 5.   Accordingly, production of Wallace's and Joan's personal tax returns, with redactions as permitted in the R&R, is necessary and relevant to the litigation.   The Court overrules Defendants' objection to producing these returns.

Second, Defendants object to producing two categories of information from E&E's general ledger: (1) balance sheets reflecting expenditures on construction in progress (e.g., capital

---

[4] The definition of "related entities" supplied in Martin's discovery requests is largely coextensive with the Business Entities, as defined above.   See Pl. Sixth Set of Disc. Requests at 5-6.

[5] In addition to this document, Defendants maintain that they have produced bonus formulas, testimony from company representatives, and market studies.   Defs. Obj. to R&R at 2 n.1.

equipment and leasehold improvements) and (2) accounts related to tooling transactions between E&E and its customers or E&E and Globe Tech. Defs. Obj. to R&R at 3-4. Defendants object to producing balance sheets regarding construction in progress on the ground that it would be unduly burdensome. Id. Defendants claim they would be forced to produce reports over sixteen accounts and three general ledgers, totaling 336 separate report inquiries and over 1,300 pages of transaction details. Id. But Defendants do not provide any estimates regarding the time or expense required to produce these documents. Moreover, Defendants report that 13,000 pages of financial documents and an additional 35,000 documents have already been produced in this case. Defs. Mot. for Protective Order at 2. Given the volume of information already exchanged, Defendants are hard-pressed to argue that producing an additional 1,300 pages will be the straw that broke the proverbial camel's back.

Defendants also object to producing accounts reflecting tooling transactions on the ground that this information is duplicative of information already produced. Defs. Obj. to R&R at 5. According to Martin, however, the documents previously produced do not include certain details that would be reflected in a general ledger, such as dates invoices were paid and transaction details such as identification numbers permitting for transaction tracking. Pl. Resp. to Defs. Obj. to R&R at 6. Martin's expert indicated in his affidavit that these details are relevant to his valuation of E&E. Thomas Frazee Aff., Ex. 1 to Pl. Rep. to Defs. Obj. to R&R, ¶¶ 12, 22 (Dkt. 72-1). Because this information is relevant to the subject matter of the litigation, the Court overrules Defendants' objections to producing this general ledger information.

The Court adopts the discovery master's recommendations and orders that Defendants produce Wallace and Joan's personal tax returns for the years 2013 through 2015 and E&E's general ledger information, subject to the limitations specified in the R&R. Because the Court

orders the production of the documents sought, subject to certain limitations, it grants in part and denies in part Martin's first motion to compel.

### C. Martin's Second Motion to Compel

Finally, the Court turns to Martin's second motion to compel. Martin raises two issues in this motion. First, he contends that deposing Defendants' three expert witnesses would not count toward the ten-deposition allotment set forth under Federal Rule of Civil Procedure 30(a)(2)(A)(i). Second, he seeks a declaration by the Court that a deposition under Federal Rule of Civil Procedure 30(b)(6) is to be treated as a single deposition although more than one person is designated to testify. Pl. Second Mot. to Compel at 1. These issues are taken in turn.

Turning to the first issue, Rule 30 applies generally to depositions by oral examination. Rule 30(a)(2)(A)(i) provides that a party must obtain the court's leave to take a deposition "if the deposition would result in more than 10 depositions being taken under this rule or Rule 31 by the plaintiffs, or by the defendants, or by the third-party defendants." Rule 26(b)(4)(A) specifically governs the depositions of expert witnesses, providing that "[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial."

This Court disagrees with Martin's view that Rule 30 does not apply to expert depositions. As stated above, Rule 30 governs depositions by oral examination generally and sets forth rules regarding durational limits, the required content of deposition notices, and acceptable methods of recording. The fact that Rule 26(b)(4)(A) separately provides for the deposition of an expert witness does not remove it from the purview of Rule 30. Indeed, the Advisory Committee notes regarding the seven-hour durational requirement set forth under Rule 30(d)(1) indicate that there may often be a need for additional time for expert witness depositions, confirming that Rule 30 applies to expert depositions. Fed. R. Civ. P. 30, Advisory Committee note to subdivision (d)

(2000).  And as a matter of policy, requiring parties to seek leave to conduct more than ten depositions ensures that the parties "develop a mutual cost-effective plan for discovery" and do not needlessly depose scores of unnecessary expert witnesses.  See 8A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2104 (3d ed. 2017)).[6]

Courts may grant leave to conduct additional depositions where a party makes a particularized showing that the discovery is necessary and consistent with the considerations set forth in Rule 26(b)(2).  See Equal Employment Opportunity Comm'n v. Chrysler, LLC, No. 07-cv-12986, 2008 WL 2622948, at *5 (E.D. Mich. July 2, 2008).  In the present motion, however, Martin has not requested to conduct more than ten depositions.  Nor would such a request be appropriate at the present stage, given that Martin has taken five depositions and has not demonstrated that he anticipates exhausting his allotment.  See Theoharis v. Rongen, No. C13–1345, 2014 WL 2711806, at *3 (W.D. Wash. June 16, 2014) (denying motion to conduct more than ten depositions as premature when the limit had not been exhausted).

With respect to the second issue raised in the motion to compel, Martin contends that Defendants have designated four corporate representatives in response to his single Rule 30(b)(6) deposition notice directed to E&E.  Pl. Second Mot. to Compel at 5.  Martin maintains that a Rule 30(b)(6) deposition must be treated as a single deposition, even where multiple designees testify.  Id.  Defendants concur.  Defs. Resp to Pl. Second Mot. to Compel at 12 (Dkt. 73).  Accordingly,

---

[6] The authority cited by Martin in support of his contrary position is not persuasive.  Some of the cases do not concern the issue of whether expert depositions count toward the ten-deposition limit under Rule 30.  See, e.g., Mahavisno v. Compendia Bioscience, Inc., No. 13-CV-12207, 2015 WL 5698519, at *2 (E.D. Mich. Sept. 29, 2015) (permitting the deposition of an expert for a third time, as he was previously deposed as a lay witness and as a corporate designee).  In another case, the parties stipulated that expert depositions did not count toward the ten-deposition limit, Rayco Mfg., Inc. v. Deutz Corp., No. 5:08 CV 00074, 2010 WL 183866, at *3 (N.D. Ohio Jan. 14, 2010), while one final case cites to Rayco with no further analysis of the issue, Martin v. Trott Law, P.C., No. 15-12838, 2016  WL  9444403, at *3 n.4 (E.D. Mich. Dec. 20, 2016).

there is no dispute that the Rule 30(b)(6) deposition will be treated as one deposition, although four persons are designated as representatives.

Defendants, however, seek to enforce the presumptive seven-hour time limit for the combined testimony set forth under Rule 30(d)(1), and object to the deposition notice based on its breadth and duplication of topics.  Id. at 12-13.  Rule 30(d)(1) provides that "[u]nless otherwise stipulated or ordered by the court, a deposition is limited to one day of 7 hours."  As the Advisory Committee notes state, "[f]or purposes of this durational limit, the deposition of each person designated under Rule 30(b)(6) should be considered a separate deposition."  Fed. R. Civ. P. 30, Advisory Committee note to subdivision (d) (2000).  In accordance with the Advisory Committee note, courts have declined to limit a Rule 30(b)(6) deposition to seven hours.  See Buie v. District of Columbia, 327 F.R.D. 1, 15 (D.D.C. 2018).

However, in recognition of the potentially broad scope of Rule 30(b)(6) Notice, see Dep. Notice, Ex. 5 to Pl. Second Mot. to Compel (Dkt. 71-6), permitting a seven-hour examination of each of the four designees will render the Rule 30(b)(6) deposition excessively long.  The Court will, therefore, exercise its discretion to modify the time limit for the 30(b)(6) deposition, and set a fourteen-hour limit for the cumulative testimony.  Unless the parties agree otherwise, no more than seven hours of testimony may be taken during a single day of the 30(b)(6) deposition, regardless of the number of designees who testify.

Defendants' object that some of the topics listed in the Rule 30(b)(6) notice are duplicative of testimony already provided by both Wallace and Brian Swanson, E&E's chief financial officer. Defs. Resp. to Pl. Second Mot. to Compel. at 13.  However, E&E is a party to this action and a legal entity distinct from its shareholders or directors.  See Rymal v. Baergen, 686 N.W.2d 241, 252 (Mich. Ct. App. 2004) ("The law treats a corporation as an entirely separate entity from its

shareholders, even where one individual owns all the corporation's stock."). Martin is entitled to depose E&E in its own right.

The Court, therefore, grants in part and denies in part Martin's second motion to compel. First, expert depositions will count toward the ten-deposition limit set forth under Rule 30(a)(2)(A)(i); however, Martin may file a motion seeking leave to conduct additional depositions if good cause can be demonstrated. Second, the Rule 30(b)(6) deposition will qualify as one deposition, irrespective of the number of designees, but the cumulative testimony shall not exceed 14 hours.

### III.     CONCLUSION

For the reasons stated above, the Court (1) grants Martin's motion for leave to file a second amended complaint (Dkt. 47); (2) overrules Defendants' objections to the R&R (Dkt. 69); (3) accepts the recommendation of the discovery master (Dkt. 67); (4) denies Defendants' motion for a protective order (Dkt. 48); (5) grants in part Martin's first motion to compel (Dkt. 60); and (6) grants in part and denies in part Martin's second motion to compel (Dkt. 71).

SO ORDERED.

Dated:  April 22, 2020                                     s/Mark A. Goldsmith
     Detroit, Michigan                                  MARK A. GOLDSMITH
                                    United States District Judge