UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTIN SMITH,

       Plaintiff,                                      Case No. 19-10330

vs.                                            HON. MARK A. GOLDSMITH

WALLACE E. SMITH, et al.,

       Defendants.

_____/

**OPINION & ORDER**
**GRANTING IN PART AND DENYING IN PART**
**DEFENDANTS' MOTION FOR PARTIAL DISMISSAL AND PARTIAL SUMMARY**
**JUDGMENT (Dkt. 75) AND DENYING PLAINTIFF'S MOTION FOR PARTIAL**
**SUMMARY JUDGMENT (Dkts. 76, 88)**

      This matter is before the Court on Defendants Wallace E. Smith, Joan E. Smith, Amanda Menchinger, and E&E Manufacturing Corporation, Inc.'s ("E&E") amended motion for partial dismissal and partial summary judgment (Dkt. 75) and Plaintiff Martin Smith's motion for partial summary judgment (Dkt. 76, 88). Martin's motion is fully briefed, but Defendants did not file a reply brief in support of their motion.[1] Because oral argument will not assist in the decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). For the reasons that follow, the Court grants in part and denies in part Defendants' motion and denies Martin's motion.

---

[1] Defendants filed a reply in support of their original motion to dismiss, which was superseded by the present motion. See Defs. Reply (Dkt. 33).

## I. BACKGROUND

The present action involves a dispute between the shareholders of E&E, a closely held corporation. Martin is a minority shareholder, who owns approximately 48.5% of E&E's outstanding stock, while his brother, Wallace, and Wallace's wife, Joan, are majority shareholders, who together own the remaining 51.5% of the company stock. Wallace Dep., Ex. 1 to Pl. Mot., at 29:24-30:1 (Dkt. 88-2); Defs. Answer ¶ 48 (Dkt. 25).[2] Wallace and Joan are the sole directors of E&E, and Wallace serves as E&E's president, chairman of the board, treasurer, and secretary. Defs. Answer ¶¶ 49-50.

Between 2012 and 2018, E&E has generated annual net income ranging from approximately $3.5 million to $5.0 million. Full E&E Consolidated Balance Sheets, Ex. 5 to Pl. Mot. (Dkt. 89). Yet Wallace and Joan, acting as controlling shareholders, have refused to authorize dividend distributions to E&E's shareholders. Wallace Dep. at 29:6-12, 61:19-63:3; Joan Dep., Ex. 2 to Pl. Mot., at 52:2-53:5 (Dkt. 88-3). According to Wallace and Joan, E&E has a longstanding policy of not issuing dividends, as the company instead uses profits for growth and to reduce debt. Wallace Dep. at 61:19-63:3; Joan Dep. at 52:2-53:5. E&E is further restricted from issuing dividends under the terms of a joint credit agreement (the "Credit Agreement"), executed in February 2013 with Citizens Bank. See Joint Credit Agreement, Ex. 20 to Pl. Mot. § 6.5 (Dkt. 88-21).

---

[2] Beginning in the early 1990s, Martin and Wallace' father began gifting them shares of E&E's stock. Martin Dep., Ex. A to Defs. Resp. to Pl. Mot. to Am., at 25:7-21 (Dkt. 51-2). Martin and Wallace were both non-controlling shareholders of E&E until 1996, when their father gifted the balance of his shares—and, consequently, majority control of E&E—to Wallace. Wallace Dep. at 53:4-16; 54:24-55:21. Martin, Wallace, and Joan allegedly own their shares both individually and through trusts that they either control or of which they are the beneficiaries. Second Am. Compl., Ex. 1 to Pl. Mot. to Amend, ¶ 52 (Dkt. 47-2). The structure of the trusts, however, is not material to the present set of motions.

Because Wallace and Joan have not authorized dividend distributions, Martin has received no financial benefit from his minority interest in E&E.  Meanwhile, Wallace has approved his own annual compensation in the millions of dollars.  See E&E Tax Returns, Exs. 7-11 to Pl. Mot. (Dkts. 88-8, 88-9, 88-10, 88-11, and 88-12).  Additionally, Martin alleges that Wallace and Joan have engaged in self-dealing by causing E&E to enter into business transactions with various business entities (the "Business Entities") owned by Joan and each of Wallace and Joan's three children.[3] Pl. Mot. at 5-7.  In particular, the JAW Smith Entities own five parcels of real property that they lease to E&E and E&E's wholly owned subsidiary E&E Manufacturing of Tennessee, LLC ("E&E of Tennessee").  Wallace Dep. at 84:16-22.  Because Wallace serves as the sole manager of each of the JAW Smith Entities, id. at 217:18-20, he acted on behalf of E&E and E&E of Tennessee, on the one hand, and on behalf of the JAW Smith Entities, on the other hand, in executing the leases.

Based on these leases, Martin maintains that E&E and E&E of Tennessee have paid millions of dollars in rent to the JAW Smith Entities from 2012 to the present.  Pl. Mot. at 6.  The JAW Smith Entities, in turn, have distributed millions of dollars to Joan and the three children from 2012 to the present.  Defs. Resp. to Interrogatory 1 of Pl. Sixth Disc. Requests, Ex. 19 to Pl. Mot. (Dkt. 88-20).  Accordingly, Martin claims that Wallace and Joan are "siphoning" money from

---

[3] The Business Entities include the following enterprises: JAW Trading Company, Inc. ("JAW Trading"); JAW Smith, LLC; JAW Smith II, LLC; JAW Smith III, LLC; JAW Smith IV, LLC; JAW Smith V, LLC; Globe Tech, LLC ("Globe Tech"); and Die Tech Sp. Zoo ("Die Tech"), a Polish company.  JAW Trading, as well as the five JAW Smith limited liability companies (collectively, the "JAW Smith Entities"), are owned by Joan and each of Wallace and Joan's three children.  Entity Chart, Ex. C to Defs. Resp. to Pl. Mot. to Amend (Dkt. 51-4).  Joan and the three children each own a 25% interest in JAW Trading and the JAW Smith Entities (except that Joan owns a 23.75% interest and a family trust owns a 1.25% interest in JAW Smith II, LLC).  Id. Globe Tech and Die Tech are both wholly owned by JAW Trading.  Id.

E&E and E&E of Tennessee for their own personal benefit.  See Second Am. Compl. ("SAC"), Ex. 1 to Pl. Mot. to Amend, ¶ 132 (Dkt. 47-2).

Martin initiated the present litigation claiming that he has received no compensation for his minority ownership in E&E, while Wallace, Joan, and their immediate family have profited handsomely.  Id. ¶¶ 9-10, 14.  Specifically, Martin brings claims for shareholder oppression under Michigan Compiled Laws ("MCL") § 450.1489 (Count I), breach of fiduciary duties under MCL § 450.1541a (Count II), and a shareholder action under MCL § 600.3605 (Count III).  Martin seeks various forms of relief, including, but not limited to, a court-ordered buyout of his shares; an award of damages; payment of prospective and retroactive dividends; removal of the individual Defendants as officers, directors, and managers of E&E and E&E of Tennessee; disgorgement of any funds wrongfully obtained by Defendants; and an accounting.  See generally SAC.

Before the Court are the parties' motions for partial summary judgment.  Defendants seek a ruling determining the statute of limitations applicable to Martin's claims for damages.  Defs. Mot. at 7, 14.  Additionally, they seek dismissal of Count III on the ground that it fails to state a claim.  Id. at 9-10.  Martin, in turn, maintains that he is entitled to summary judgment on Count I of the SAC.  Pl. Mot. at 11.

## II.  STANDARDS OF REVIEW

### A.  Motion to Dismiss

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "[t]he defendant has the burden of showing that the plaintiff has failed to state a claim for relief."  Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007) (citing Carver v. Bunch, 946 F.2d 451, 454-455 (6th Cir. 1991)), cert. denied, 552 U.S. 1311 (2008).  To survive a Rule 12(b)(6) motion, the plaintiff must allege sufficient facts to state a claim to relief above the speculative level, such that it is

"plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The plausibility standard requires courts to accept the alleged facts as true, even when their truth is doubtful, and to make all reasonable inferences in favor of the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Twombly, 550 U.S. at 555-556.

Evaluating a complaint's plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. Although a complaint that offers no more than "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" will not suffice, id. at 678, it need not contain "detailed factual allegations," Twombly, 550 U.S. at 555; see also Erickson v. Pardus, 551 U.S. 89, 93 (2007) ("[S]pecific facts are not necessary . . . ."). Rather, a complaint needs only enough facts to suggest that discovery may reveal evidence of illegality, even if the likelihood of finding such evidence is remote. Twombly, 550 U.S. at 556.

### B. Summary Judgment

A motion for summary judgment under Federal Rule of Civil Procedure 56 shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once the movant satisfies its initial burden of demonstrating the absence of any genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact. Scott, 550 U.S. at 380; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Scott, 550 U.S. at 380 (quoting Matsushita, 475 U.S. at 586), as the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," id. (quoting Anderson, 477 U.S. at 247-248) (emphasis in original); see also Babcock & Wilcox Co. v. Cormetech, Inc., 848 F.3d 754, 758 (6th Cir. 2017) ("A mere scintilla of evidence or some metaphysical doubt as to a material fact is insufficient to forestall summary judgment.").

## III. ANALYSIS

### A. Defendants' Motion

In their motion, Defendants contend that Martin's claims for damages are subject to either a three-year statute of limitations or a two-year statute of limitations, given that Martin knew or had reason to know that distributions were not being made. Defs. Mot. at 7, 14. Additionally, Defendants seek dismissal of Count III for failure to state a claim, arguing that such a claim must be premised on dissipation of corporate assets resulting in insolvency. Id. at 9-10. The Court takes each of these issues in turn.

#### 1. Statute of Limitations

##### a. Counts I and II

Count I asserts a claim of shareholder oppression under MCL § 450.1489, while Count II alleges breach of fiduciary duties under MCL § 450.1541a. Under MCL § 450.1489(1)(f), an action for damages based on shareholder oppression must be commenced within three years after

the cause of action has accrued, or within two years after the time when the cause of action is discovered or should reasonably have been discovered by the shareholder, whichever occurs first. MCL § 450.1489(1)(f).  The statute of limitations for breach of fiduciary duty actions brought under MCL § 450.1541a is virtually identical.  See MCL § 450.1541a(4).

The shareholder oppression statute authorizes various forms of equitable relief under § 450.1489(1)(a)-(e) and authorizes the recovery of damages under § 450.1489(1)(f).  The statute of limitations set forth under MCL § 450.1489(1)(f) applies by its express terms only to claims for an award of damages and not to the equitable remedies specified in subsections (a)-(e).  See Billstein v. Goodman, No. 08-13415, 2011 WL 13161321, at *2 (E.D. Mich. June 14, 2011); see also Madugula v. Taub, 853 N.W.2d 75, 90 (Mich. 2014) (noting that subsections (a)-(e) provide for equitable relief, while subsection (1)(f) provides for damages, which is traditionally considered legal relief).  The six-year statute of limitations applies to claims for equitable relief under subsections (a)-(e).  Billstein, 2011 WL 13161321, at *2; Estes v. Idea Eng'g & Fabrications, Inc., 649 N.W.2d 84, 93 (Mich. Ct. App. 2002) (holding that "the catch-all six-year period of limitation set forth in M.C.L. § 600.5813 applies" where subsection (1)(f) does not apply).

Defendants do not dispute this distinction and seek to impose the statute of limitations under MCL § 450.1489(1)(f) and § 450.1541a(4) only with respect to Martin's claims seeking damages.  See Defs. Reply at 1.[4]  However, Defendants' briefing reveals a misconception regarding what forms of relief qualify as damages, as opposed to equitable relief.  Specifically, Defendants maintain that Martin seeks damages insofar as he seeks "compensatory, actual, incidental, consequential, exemplary and other damages."  Defs. Mot. at 5.  This assertion is

---

[4] While MCL § 450.1541a(4) is not expressly limited to claims for damages, Defendants do not seek to impose this statute of limitations beyond Martin's claims for damages.

unobjectionable. But Defendants also contend that the following types of relief also amount to damages: (i) a buyout of Martin's shares, (ii) prospective and retroactive dividend payments, (iii) disgorgement of all sums received by the individual Defendants as a result of their breaches, and (iv) imposition of a constructive trust over any amounts wrongfully obtained by Defendants. Id. at 5-6; Defs. Reply at 1.

The Michigan Supreme Court has held that relief requiring a court to compel an act constitutes equitable relief. Madugula, 853 N.W.2d at 90. Consequently, because a forced buyout requires the court to compel a party to purchase shares, it is considered equitable relief even though the final result is a payment of money. Id. Likewise, although a distribution of dividends would result in a payment of money, such relief would require a court to compel a corporation to declare and issue those dividends. See Miller v. Magline, 256 N.W.2d 761, 754 (Mich. Ct. App. 1977) ("[A] shareholder's action to compel a dividend is heard on the equity side."); see also Dodge v. Ford Motor Co., 170 N.W. 668, 682 (Mich. 1919). Disgorgement is also recognized to be an equitable remedy. See Sec. Exchange Comm'n v. Blavin, 760 F.2d 706, 713 (6th Cir. 1985). Finally, the imposition of a constructive trust is an equitable remedy. See Kent v. Klein, 91 N.W.2d 11, 14 (Mich. 1958); In re Filibeck Estate, 853 N.W.2d 448, 449 (Mich. Ct. App. 2014).

Because these types of relief qualify as equitable remedies as opposed to damages, the statute of limitations set forth under MCL § 450.1489(1)(f) does not apply. Instead, the residual six-year statute of limitations would apply to Martin's claims for equitable relief, including his claims seeking distribution of dividends.

Having determined that the statute of limitations under MCL § 450.1489(1)(f) applies only to Martin's claims for damages, the Court must resolve whether a two- or three-year limitations period is appropriate. A two-year limitations period applies when "the cause of action is

discovered or should reasonably have been discovered, by the complainant." MCL § 450.1541a(4); see MCL § 4501489(1)(f). In applying the "discovery rule," courts evaluate whether, through the exercise of reasonable diligence, a plaintiff should have discovered (1) an injury and (2) the causal connection between the injury and a defendant's breach of duty. Jackson Cty. Hog Producers v. Consumers Power Co., 592 N.W.2d 112, 115 (Mich. Ct. App. 1999).

Defendants maintain that Martin was or should have been aware of any injury sustained as a result of receiving no dividend payments. Defs. Mot. at 9. The evidence supports this argument. On November 19, 1998, Martin's attorney sent a letter to E&E's counsel challenging the lack of dividend distributions despite E&E's substantial profits in 1996 and 1997. 11/19/98 Letter, Ex. B to Defs. Mot. (Dkt. 75-3). Additionally, Defendants have produced a series of cover letters and e-mails indicating that from 2005 through 2017, Defendants shared E&E's annual financial reports with Martin's attorney. See Financial Statement Correspondence, Ex. I to Defs. Mot. (Dkt. 75-10). Martin admits that between 2012 and 2017, he received abbreviated financial reports that excluded the endnotes and accounting disclosures necessary to provide context to the financial data. See Pl. Resp. at 14 (Dkt. 94) (citing Incomplete E&E Consolidated Balance Sheets, Ex. 8 to Pl. Resp. (Dkt. 96)). Although incomplete, these balance sheets indicate that E&E generated annual net income ranging from approximately $3.5 million to $5.0 million. Incomplete E&E Consolidated Balance Sheets.

In light of this information, Martin was aware or should have been aware of a potential cause of action each year that E&E failed to declare dividends despite its profits. This knowledge renders application of the two-year statute of limitations appropriate, but only to a limited extent. Specifically, a two-year limitations period applies only to damages Martin may have sustained as a result of the allegedly wrongful failure to distribute dividends. As discussed above, the two-year

limitations period does not apply to Martin's <u>equitable</u> claim seeking the actual distribution of dividends.  Nor have Defendants shown that the two-year limitations period applies to damages Martin may have sustained as a result of other alleged conduct underlying Counts I and II.  For example, Martin also alleges that Defendants have siphoned money away from E&E in the form of Wallace's excessive compensations and conflicted transactions with the Business Entities.  SAC ¶¶ 110-117, 227, 248-249.  According to the SAC, such conduct has negatively impacted the value of Martin's shareholder interest in E&E.  <u>Id.</u> ¶ 227.  Defendants have not argued that Martin either knew or should have known about this conduct.

In summary, Martin's Count I and II claims for <u>damages</u> are subject to a three-year statute of limitations; his Count I and II claims for <u>damages</u> stemming from Defendants' failure to distribute dividends are subject to a two-year statute of limitations; and his Count I and II claims for <u>equitable</u> relief are subject to a six-year statute of limitations.

### b.  Count III

The parties dispute what statute of limitations applies to Count III, a shareholder action under MCL § 600.3605, as this provision is silent with respect to a limitations period.  Martin maintains that the residual six-year statute of limitations under MCL § 600.5813 applies.  Pl. Resp. at 23-24.  Defendants maintain that the limitations periods under MCL § 450.1489(1)(f) and § 450.1541a(4) apply to Count III.  Defs. Mot. at 14.  According to Defendants, Count III is nothing more than a restatement of the alleged violations of duties imposed by MCL § 450.1489 and § 450.1541a.  <u>Id.</u>  Therefore, Defendants argue, the more specific statute of limitations imposed in those two sections takes precedence over the general "catch-all" provision under MCL § 600.5813. <u>Id.</u> at 14-15.

But as discussed above, the statute of limitations set forth under MCL § 450.1489(1)(f) applies only to awards of damages. The relief sought in Count III under MCL § 600.3605 is equitable in nature. See MCL § 600.3645 ("Actions brought under this chapter are equitable in nature."). Accordingly, the six-year statute of limitations under MCL § 600.5813 applies.

### 2. Fraudulent Concealment

Martin contends that any statute of limitations is tolled due to Defendants' fraudulent concealment of their wrongful conduct. Pl. Resp at 13. Specifically, Martin alleges that Wallace and Joan concealed Wallace's excessive compensation and the conflicted transactions between E&E and the Business Entities. Id. at 4-5, 14.

"[T]he running of a statutory period of limitations may be tolled pursuant to the fraudulent-concealment statute, MCL 600.5855 . . . ." Frank v. Linkner, 894 N.W.2d 574, 584 (Mich. 2017) (quoting MCL § 600.5827).[5] The fraudulent concealment statute provides:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

MCL § 600.5855.

Although fraudulent concealment typically must be manifested by some affirmative act or misrepresentation, an exception to this rule applies when there is an affirmative duty to disclose material information by virtue of a fiduciary relationship. Brownell v. Garber, 503 N.W.2d 81, 85 (Mich. Ct. App. 1993). Additionally, a plaintiff claiming fraudulent concealment must

---

[5] Frank involved the statute of limitations under MCL § 450.4515, Michigan's member oppression statute applicable to limited liability companies. See 894 N.W.2d at 577. This statute of limitations is identical to that set forth under MCL § 450.1489(1)(f).

demonstrate that the defendant "intended to prevent the discovery of the claim." Grand Traverse Band of Ottawa and Chippewa Indians v. Blue Cross & Blue Shield of Mich., 391 F. Supp. 3d 706, 719 (E.D. Mich. 2019) ("Although plaintiffs are correct that they need not plead an affirmative misrepresentation because fiduciaries have an affirmative duty to disclose, there is no indication that this exception somehow removes the deceptive intent element of an affirmative misrepresentation.").

There is no dispute that as directors and majority shareholders of E&E, Wallace and Joan owed fiduciary duties to Martin, as a minority shareholder. See Veeser v. Robinson Hotel Co., 266 N.W.54, 56 (1936). Martin asserts that Wallace and Joan failed to disclose material information bearing on his present claims. Pl. Resp. at 14. In particular, Martin claims that Wallace and Joan failed to disclose information such as the amount of Wallace's compensation, the terms of the Credit Agreement, the terms of the lease agreements between E&E (and E&E of Tennessee) and the JAW Smith Entities, and the value of distributions received by Joan and Wallace and Joan's children from the Business Entities. Id.

Additionally, Martin claims that Defendants sent him incomplete, four-page versions of E&E's annual financial reports that excluded endnotes that were part of the full versions of the documents. Compare Incomplete E&E Consolidated Balance Sheets, with Full E&E Consolidated Balance Sheets, Ex. 10 to Pl. Resp. (Dkt. 97). Indeed, the full balance sheets would have put Martin on notice of the lease agreements, as they reported that E&E "leases various facilities from entities related through common ownership." Full E&E Consolidated Balance Sheets at PageID.4919. The full versions also reported the amounts of annual rent expenses and anticipated future financial commitments under the leases. Id.

If Wallace and Joan had a fiduciary obligation to disclose this information to Martin—including the information reflected in the full balance sheets—their failure to do so would be consistent with fraudulent concealment.  Thus, Martin has adduced evidence supporting his argument regarding fraudulent concealment.  Defendants, in turn, have not filed a reply brief with evidence refuting fraudulent concealment.[6]  Because the parties have not moved for summary judgment on the issue of whether the applicable statutes of limitations are tolled under the fraudulent concealment doctrine, the Court cannot determine this issue as a matter of law at the present stage.

As discussed above, Martin's Count I and II claims for damages are subject to a three-year statute of limitations; his Count I and II claims for damages stemming from Defendants' failure to distribute dividends are subject to a two-year statute of limitations; and his Count I, II, and III claims for equitable relief are subject to a six-year statute of limitations.  However, whether these statutory limitations periods are tolled under the fraudulent concealment doctrine presents an issue for trial.  Therefore, Defendants' motion is granted insofar as their arguments are consistent with the Court's rulings above and is denied in all other respects.

### 3.  Failure to State a Claim as to Count III

Defendants contend that Count III must be dismissed in its entirety because it fails to state a claim.  Defs. Mot. at 9-10.  According to Defendants, a shareholder action under MCL

---

[6] In response to Martin's motion for leave to file a second amended complaint, Defendants addressed and adduced evidence rebutting Martin's allegations of fraudulent concealment.  See Defs. Resp. to Pl. Mot. to Am. at 14-15 (Dkt. 51).  Defendants presented evidence that they made efforts to deal openly and in good faith with Martin by discussing E&E's financial performance with and supplying any information requested by Martin's attorney.  See Heritage Aff., Ex. B to Defs. Resp. to Pl. Mot. to Am., ¶¶ 6, 9 (Dkt. 51-3).  However, they made no such showing in connection with their present motion.  Even if that evidence were considered, it would only confirm that there is a factual issue regarding fraudulent concealment.

§ 600.3605 must be premised on the dissipation of corporate assets, resulting the company's insolvency or dissolution.  Id.  Because Martin alleges that E&E is profitable, Defendants assert that he is unable to establish this prerequisite.  Id. at 10.

Chapter 36 of the Revised Judicature Act of 1961 contains a number of statutes authorizing proceedings against corporations and vesting courts with the authority to award various forms of equitable relief.  See MCL § 600.3645.  A shareholder action under MCL § 600.3605 provides forms of equitable remedies against corporate officers in connection with their management of a corporation.  For example, the statute authorizes the following types of relief:

> (a) to compel persons to account for their conduct in the management and disposition of the corporate funds and corporate property committed to their charge;
>
> (b) to compel persons to pay to the corporation which they represent, and to its creditors, all sums of money and the value of all property which they have acquired to themselves or transferred to others or have lost or wasted by any violation of their duties as directors, managers, trustees, or other officers;
>
> (c) to suspend any corporate trustee or other officer from exercising his office whenever it appears that he has abused his trust; [and]
>
> (d) to remove any corporate trustee or officer from his office upon proof or conviction of gross misconduct[.]

MCL § 600.3605.

Notably absent from the statutory language is any requirement that a plaintiff demonstrate corporate insolvency or dissolution.   Rather, subsection (b) permits a court to authorize disgorgement of all sums of money wrongfully obtained by a corporate officer if a plaintiff establishes that the corporate officer abused his duties.  Similarly, removal of a corporate officer from his office under subsection (d) requires proof of conviction or gross misconduct.

Defendants cite several cases involving claims brought under MCL § 600.3605 in the context of an insolvent or dissolved corporation.[7]  But the fact that these cases incidentally involved injuries resulting from conduct that ultimately led to the corporations' insolvency or dissolution does not mean that § 600.3605 applies only where wrongful conduct produces insolvency or dissolution through dissipation of corporate assets.  None of these cases so limits the application of § 600.3605.  Indeed, as argued by Martin, "[i]t is no surprise that parties who have been damaged by corporate insolvency might sue under any available statute to obtain some relief . . . ."  Pl. Resp. at 22.  Thus, the fact that Martin has alleged that E&E is profitable does not undermine his ability to state a claim under § 600.3605.

Accordingly, Martin has stated a claim under MCL § 600.3605.  Defendants' motion for partial dismissal and partial summary judgment is granted in part and denied in part.

**B.  Martin's Motion**

In his motion, Martin contends he is entitled to summary judgment with respect to his shareholder oppression claim only.  Pl. Mot. at 11.  Martin argues that Wallace and Joan have interfered with his shareholder interests by refusing to declare dividends, meanwhile funneling E&E's assets toward themselves and their children by causing E&E to pay Wallace excessive compensation and to pay excessive rents to the JAW Smith Entities.  Id. at 15-17.  Defendants, by

---

[7] See Travelers Ins. Co. v. Jacob C. Mol , Inc., 898 F. Supp. 528 (W.D. Mich. 1995) (involving an insurer-creditor's claim against the individual with sole control over the corporation at the time of its sale of assets and dissolution to recover for unpaid insurance premiums owed by the corporation); Christner v. Anderson, Nietzke & Co., P.C., 444 N.W.2d 783-784 (Mich. 1989) (holding that an individual shareholder-director had standing to bring suit against the remaining shareholder-directors following dissolution of corporation); City of Muskegon v. Amec, Inc., 62 Mich. App. 644, 645-646 (1975) (holding that a complaint stated a claim where it alleged that the individual directors and officers of corporation "caused the corporation to be dissolved, leaving it without sufficient assets to meet its known outstanding debts").

contrast, contend that their decision not to issue dividends is protected under the business judgment rule, as they had legitimate business reasons for taking these actions.  Defs. Resp. at 11 (Dkt. 99).

Under MCL § 450.1489, "the Michigan Legislature provided a cause of action to redress certain wrongs by those in control of a closely held corporation when the acts interfere with a shareholder's property rights."  Franks v. Franks, – N.W.2d – , No. 343290, 2019 WL 4648446, at *8 (Mich. Ct. App. Sept. 24, 2019).  The statute provides a cause of action for shareholders of a closely held corporation "to establish that the acts of the directors or those in control of the corporation are illegal, fraudulent, or willfully unfair and oppressive to the corporation or to the shareholder."  MCL § 450.1489(1).

To succeed in a claim for shareholder oppression under MCL § 450.1489, a plaintiff must establish the following elements: (i) that he is a shareholder of the corporation; (ii) that the defendants were "directors" or "in control of the corporation"; (iii) that the defendants engaged in acts; and (iv) that those acts were "illegal, fraudulent, or willfully unfair and oppressive" to the corporation or to them as shareholders.  Franks, 2019 WL 4648446, at *10.  To establish that the defendants' acts were willfully unfair and oppressive, a plaintiff must prove (i) "that the acts amounted to a 'continuing course of conduct or a significant action or series of actions that substantially' interfered with their interests as shareholders," and (ii) "that defendants took those acts with the intent to interfere with their interests as shareholders."  Id.  However, oppressive conduct does not include "conduct or actions that are permitted by an agreement, the articles of incorporation, the bylaws, or a consistently applied written corporate policy or procedure."  MCL § 450.1489(3).

Here, there is no question that Martin is a shareholder of E&E and that Wallace and Joan served as directors in control of the company.  Accordingly, the Court must evaluate whether

16

Martin has established, as a matter of law, that Defendants engaged in a course of conduct or took significant action that substantially interfered with Martin's interests as a shareholder. Additionally, the Court must determine whether Martin has established, as a matter of law, that Defendants undertook those acts with the intent to interfere with Martin's interests.

It is well established under Michigan law that the primary purpose of a business corporation is to benefit and profit the stockholders. Dodge, 170 N.W. at 684. In Dodge, minority shareholders of Ford Motor Company made a demand for further dividends, arguing that where the company had a surplus of $112 million and had made profits of $60 million, the directors' decision to declare minimal dividends was arbitrary. Id. at 683. The Michigan Supreme Court agreed, notwithstanding the directors' aim to use profits to benefit the general public:

> There should be no confusion (of which there is evidence) of the duties which Mr. Ford conceives that he and the stockholders owe to the general public and the duties which in law he and his codirectors owe to protesting, minority stockholders. A business corporation is organized and carried on primarily for the profit of the stockholders. The powers of the directors are to be employed for that end.

Id. at 684. In recognition of this principle, caselaw has held that a failure to declare dividends can give rise to a shareholder oppression claim. See Franks, 2019 WL 4648446, at *11-12; see also Wolding v. Clark, 563 F. App'x 444, 453-454 (6th Cir. 2014); Blankenship v. Superior Controls, Inc., 135 F. Supp. 3d 608, 618 (E.D. Mich. 2015).

Under the business judgment rule, courts typically refrain from interfering with directors' discretion to withhold dividends unless it is clear that the directors have engaged in fraud or misappropriation, or "'refuse to declare dividends when the corporation has a surplus of net profits which it can without detriment to its business, divide among its stockholders . . . .'" Wolding, 563

F. App'x at 453 (quoting <u>Matter of Estate of Butterfield</u>, 341 N.W.2d 453, 458 (1983)).[8] Nevertheless, "the business judgment rule does not prohibit a court from evaluating [directors'] business decisions—including their dividend policy—in light of the totality of the evidence to determine whether the evidence showed that defendants formulated their policy in bad faith and as part of a plan to commit acts amounting to shareholder oppression . . . ." <u>Franks</u>, 2019 WL 4648446, at *11.

To illustrate, <u>Franks</u> involved a shareholder oppression claim brought by minority shareholders of Burr Oak, a closely held company. <u>Id.</u> While it was Burr Oak's historical practice to distribute dividends, the controlling shareholders began to withhold dividends following the death of Burr Oak's founder, purportedly to cover financial obligations arising from the founder's estate plan. <u>Id.</u> at *12. But while the evidence demonstrated that these obligations ended in 2012 and that Burr Oak was financially able to pay dividends, the controlling shareholders continued to withhold dividends. <u>Id.</u> at *2-3, 12. Further, the evidence demonstrated that the controlling shareholders offered to redeem the plaintiffs' shares at a rate hundreds of dollars per share lower than they were worth, according to a valuation report. <u>Id.</u> at *12. The court held that the evidence, left unrebutted, would establish that the controlling shareholders interfered with the plaintiffs' interests by withholding dividends—thereby depriving the plaintiffs of income and devaluing their shares. <u>Id.</u>

---

[8] Martin contends that the business judgment rule does not apply. Pl. Reply at 4-5 (Dkt. 100). In <u>Franks</u>, the Michigan Court of Appeals stated that "a shareholder necessarily overcomes the business judgment rule by presenting evidence to establish the elements of a claim under the shareholder-oppression statute . . . ." 2019 WL 4648446, at *11. But this case did not render the business judgment rule inapplicable. Rather, the court clarified that the business judgment rule does not prevent courts from evaluating corporate directors' business decisions in determining whether their policies were formulated in bad faith. <u>Id.</u> Indeed, the court proceeded to evaluate the controlling shareholders' purported legitimate business reasons for withholding dividends and concluded that the conflicting evidence presented a question of fact. <u>Id.</u> at *13.

The controlling shareholders, however, adduced evidence demonstrating that Burr Oak had legitimate business reasons for withholding dividends. Id. at *13. Specifically, the evidence showed that profits were used to pay off debt and to expand Burr Oak's facilities and that Burr Oak's financial position was weaker than represented by the plaintiffs. Id. The controlling shareholders also presented evidence demonstrating that they eventually offered to redeem the plaintiffs' shares at a significantly higher rate and disclosed the valuation report to the plaintiffs to enable them to better assess the value of their shares. Id. In view of this evidence, the court concluded that the defendants established a question of fact as to whether their acts were willfully unfair and oppressive. Id.

A similar outcome was reached in Blankenship, in which the plaintiff, a minority shareholder of Superior Controls, brought a shareholder oppression claim against defendants, the directors of the company, based in part on their failure to declare dividends in 2011 and 2012. 135 F. Supp. 3d at 617. In opposing the directors' motion for summary judgment, the plaintiff proffered evidence that Superior Controls had a surplus of profits that, according to the company's CFO, could have been distributed without harming the company. Id. at 620. Additionally, the plaintiff demonstrated that he was disproportionately affected by the failure to declare dividends because he sold his shares in 2013 and, therefore, would not benefit in the increased value of the company. Id. However, the directors of Superior Controls supplied evidence demonstrating legitimate business purposes for withholding dividends, including the need to preserve cash to meet contractual commitments to customers, the unexpected cancellation of Superior Controls' line of credit with its lender, and the unpredictability of future cash flow. Id. In light of the conflicting evidence, the court held that there was a genuine dispute of material fact regarding whether it was willfully oppressive for the directors to refuse to declare dividends. Id. at 621.

Finally, in Wolding, the Sixth Circuit affirmed the district court's decision granting summary judgment in favor of the defendant, the controlling shareholder, on the minority shareholder's oppression claim. 563 F. App'x at 454. The record evidence demonstrated that the defendant notified the minority shareholder of his decision to temporarily reduce distributions due to the economic downturn, reduced commission rates, and increased operating costs. Id. The defendant also used company funds to prepay certain business expenses and to open two new stores. Id. The Sixth Circuit concluded that summary judgment was appropriate, as the minority shareholder offered no evidence rebutting the defendant's proffered legitimate business purposes. Id. at 454-456. Specifically, the minority shareholder failed to show that he was disproportionately impacted by the failure to declare dividends or that the company had a surplus of profits that could have been distributed at no harm to the company. Id.

In the present action, there is no dispute that E&E has been a profitable company. See 8/1/19 Hr'g Tr., Ex. 21 to Pl. Mot., at 11:11-12 (Dkt. 88-22) ("E&E is a profitable company; there's no doubt about it."). As stated above, between 2012 and 2018, E&E has reported annual net income ranging between approximately $3.5 million and $5.0 million. Full E&E Consolidated Balance Sheets. Yet Wallace and Joan have refused to authorize dividend distributions. Wallace Dep. at 29:6-12, 61:19-63:3; Joan Dep. at 52:2-53:5. Because Martin is not employed by E&E and has no management role in the company, his ability to derive financial benefit from his shares is limited to the payment of dividends or a buyout of his shares. See Wallace Dep. at 30:2-15; 32:11-20; 58:6-16. Accordingly, Martin has received no income from his minority interest in E&E. Id. at 30:2-15; 63:4-12.

Meanwhile, Wallace and Joan have approved Wallace's compensation in the millions of dollars. Between 2012 and 2016, Wallace received annual compensation from E&E ranging from

$1.2 million to $3.5 million.  See E&E Tax Returns.  In 2017, Wallace earned approximately $530,000 in compensation, and in 2018 he earned approximately $250,000.  See 2017-2018 Employment Record of Compensation, Ex. 12 to Pl. Mot. (Dkt. 88-13).  By Defendants' calculation, Wallace has received $11.3 million in total cash compensation between 2013 and 2018, for an annual average of $1.8 million.  Wallace Dep. at 24:19-25:14.

Additionally, Martin has proffered evidence that Wallace has engaged in self-dealing by causing E&E and E&E of Tennessee to enter into lease agreements with the JAW Smith Entities. Wallace Dep. at 84:16-22.  According to the financial reports, E&E and E&E of Tennessee have paid annual rents in the millions of dollars to the JAW Smith Entities between 2012 and 2018. Full E&E Consolidated Balance Sheets at PageIDs 3977, 3998, 4017, 4036, 4053, 4071, 4089. Additionally, the leases specify that E&E and E&E of Tennessee were to pay all expenses relating to the real property, including property taxes, building insurance, and maintenance costs.  See JAW Smith Leases, Ex. 17 to Pl. Mot. (Dkt. 92).  And while E&E and E&E of Tennessee have paid rents to the JAW Smith Entities, the JAW Smith Entities have, in turn, made distributions to Joan and the three children totaling in the millions of dollars.  See Defs. Resp. to Interrogatory 1 of Pl. Sixth Disc. Requests.

Taken together, this evidence could support a finding that Wallace and Joan undertook a continuing course of conduct that substantially interfered with Martin's interest in receiving dividends, while simultaneously enriching themselves.

Martin has also adduced evidence that would support a conclusion that Wallace and Joan intended to interfere with Martin's interests.  As stated by Wallace, "E&E is not run as a charity for its shareholders.  The purpose of the business is not to provide a lifestyle nor an income to either of the shareholders.  You have to work and earn your income, and as a result, you receive

the benefit through the appreciation of your shares."  Wallace Dep. at 280:10-15.  Wallace maintains that shareholders are not entitled to benefit from their shares beyond the potential to sell them at an increased value.  Id. at 274:21-24.  Martin contends that he is disproportionately impacted by this policy, as he is the only shareholder who reaps no pecuniary benefit.  Pl. Mot. at 19.  Indeed, as described above, Martin has presented evidence that Wallace and Joan directly benefit from their shares through Wallace's compensation, while their children indirectly benefit through the transactions with the JAW Smith Entities.

Additionally, Martin maintains that E&E pays exorbitant amounts of compensation to Wallace and excessive rents to the JAW Smith Entities in a pretextual effort to diminish its revenues and claim there are no excess profits remaining to declare dividends.  Pl. Mot. at 17. Indeed, Brian Swanson, the CFO of E&E (and Wallace and Joan's son-in-law) advised another businessman in an e-mail regarding strategies to handle a "non-working" shareholder:

> We've made it our policy not to issue dividends.  As long as you avoid carrying large sums of cash on your balance sheet you can get away with this policy.  We accomplish this by reinvesting cash from operations into company growth rather than taking on debt.

2/4/15 E-mail, Ex. 6 to Pl. Mot. (Dkt. 88-7).[9]  According to Martin, this e-mail evidences Defendants' scheme to spend E&E's assets on compensation and rents in order to avoid issuing dividends.  Additionally, Martin contends that the amounts of Wallace's compensation and the rents paid to the JAW Smith Entities were concealed from him, as he was provided incomplete versions of E&E's annual financial reports.  Compare Incomplete E&E Consolidated Balance Sheets, with Full E&E Consolidated Balance Sheets.

---

[9] The briefing does not reveal the identity of the businessman or the context of this e-mail exchange.  Pl. Mot. at 3, 19.

According to Martin, an intent to interfere with his interests can further be gleaned from the terms of the Credit Agreement.  While this agreement restricts E&E's ability to declare dividends, <u>see</u> Joint Credit Agreement § 6.5, it permits the payment of bonuses to Wallace, <u>id.</u> § 6.17, and contains a carve-out permitting the JAW Smith Entities to declare dividends, <u>id.</u> § 6.5(f).  In view of these terms, Martin contends that the Credit Agreement was intentionally executed in a manner that disproportionately harms him.  Pl. Reply at 3 (Dkt. 100).

Lastly, Martin claims he has been consistently pressured to sell his shares back to E&E. Pl. Mot. at 20.  Wallace admitted "we asked Martin every year pretty much if he was interested in selling his shares and the answer was always no."  Wallace Dep. 61:13-15.  Wallace also stated that purchasing Martin's shares would be "prudent" as long as "it is economically feasible and the timing is right there is the cash available," and that he would like to do so "at a reasonable price." <u>Id.</u> at 33:2, 275:4-7.

This evidence, viewed as a whole, could support a finding that Defendants acted with the intent to interfere with Martin's interest in receiving dividends.  The fact that E&E's profits appear to flow to Wallace, Joan, and their children, to the exclusion of Martin, is suspect.  The evidence also suggests that Defendants reduced E&E's net income—by paying Wallace's compensation and rent to the JAW Smith Entities—for the express purpose of avoiding a dividend distribution to Martin.  And while starving Martin of any dividend payments, Defendants consistently asked him to sell his shares "at a reasonable price."

Defendants, however, rebut Martin's motion with their own evidence that they had legitimate business purposes for withholding dividends.  Defendants contend that they are not permitted to issue dividends under the terms of the Credit Agreement.  <u>See</u> Joint Credit Agreement, § 6.5.  Defendants maintain that the terms of the Credit Agreement were dictated by Citizens Bank

in order to ensure that E&E is adequately capitalized.  Wallace Dep. at 246:1-15; Swanson Dep., Ex. B to Defs. Resp. at 183:13-17 (Dkt. 99-3).  A Citizens Bank representative confirmed that "the bank's interest was any excess cash that was in the business to either be reinvested in the business or to repay the bank debt."  Terrill Dep., Ex. F to Defs. Resp. at 43:23-44:2 (Dkt. 99-7).  Although Wallace has never attempted to negotiate a waiver of the dividend restriction, Wallace Dep. at 246:1-15, Swanson stated that he has explored whether other banks offer more favorable terms, Swanson Dep. at 180:3-16.

According to Wallace, E&E has a longstanding policy of withholding dividends that originated with Wallace and Martin's father.  Wallace Dep. at 62:12-19.  Instead, the company uses profits for growth (e.g., to replace old equipment, launch new work, and cover business costs and losses) and to pay down debt.  Id. at 61:19-63:3; Joan Dep. at 52:2-53:5.  For example, in 2021 and 2022, E&E anticipates having to replace two pieces of equipment that together will cost approximately $20 million.  See Swanson Dep. at 242:1-244:12; see also E&E Funding Summary, Ex. G to Defs. Resp. (Dkt. 99-8) (noting equipment purchases in 2017 of approximately $11 million and $10 million).  E&E also anticipates having to make a significant financial outlay in 2021 in connection with launching a new program for BMW.  See Wallace Dep. at 92:9-17 ("We're going to need that money in '21.  We're going to need it to tool up, to fund program capital . . . .").  Further, E&E's plant in Tennessee is "losing money" as a result of missed shipments, increased freight costs, management-level terminations, and a possible recall.  See Swanson Dep. at 254:11-255:16; Safety Recall Report, Ex. H to Defs. Resp. (Dkt. 99-9).  And in 2018, E&E repaid $5 million of combined debt.  Id. at 201:23-202:2.

As summarized above, the types of expenditures identified by Defendants have been recognized as valid business reasons justifying the withholding of dividend distributions.  See,

e.g., Wolding, 563 F. App'x at 454-456 (holding that the controlling shareholder's decision to withhold distributions was justified by his intent to protect the company during an economic downturn, to prepay certain expenses, and to expand the business); Franks, 2019 WL 4648446, at *13 (holding that the defendants created a genuine issue of fact by presenting evidence that their failure to declare dividends was motivated by efforts to pay down debt and to expand the company's facilities).

Defendants also explain the rationale underlying E&E's payment of rents to the JAW Smith Entities. The Credit Agreement limits the amount of debt that E&E can carry. See Joint Credit Agreement, §§ 5.9-5.10 (requiring E&E to maintain certain fixed charge coverage, global funded debt, and EBITDA ratios). To avoid violating these debt restrictions, E&E could not directly acquire real property and instead leases the properties from the JAW Smith Entities. Wallace Dep. at 84:23-85:14. Additionally, Defendants explain that the JAW Smith Entities are permitted under the Credit Agreement to distribute dividends (while E&E is not) because Citizens Bank views E&E as the "mother ship" carrying a greater credit risk than the JAW Smith Entities. Id. at 182:6-183:20. Specifically, Swanson explained that E&E's capital is volatile, given that the company must constantly recapitalize as equipment wears out and must accommodate customers' demands in the terms of payment. Id. Further, E&E must fund its own tax obligations, whereas the JAW Smith Entities' tax obligations flow to the members. Id.

Next, Defendants maintain that Wallace's compensation is not excessive. As discussed above, from 2013 through 2018, Wallace has received $11.3 million in total cash compensation, for an average of $1.8 million per year. Wallace Dep. at 24:19-25:14. Over that same period, Wallace has taken $1 million in deferred compensation, which he cannot access without bank approval. See Bonus Analysis, Ex. K to Defs. Resp. (Dkt. 99-12); Wallace Dep. at 25:9-14.

Defendants submitted market analyses performed by compensation consultant Jeff Rahmberg in 2014, 2015, 2016, and 2018, regarding Wallace's compensation. Rahmberg Compensation Studies, Ex. L to Defs. Resp. (Dkt. 99-13).[10]   In performing these analyses, Rahmberg considered Wallace's tenure with E&E, the value of the company's sales, and the company's overall success. Id.; Rahmberg Dep., Ex. O to Defs. Resp., at 47:7-17 (Dkt. 99-16). Rahmberg consistently concluded that Wallace's compensation fell below the fiftieth percentile of compensation levels reported for directors/owners at companies with sales volumes similar to E&E. See id. Defendants further maintain that Wallace's level of compensation is well earned, given that E&E has significantly increased in value under Wallace's leadership. See Martin Dep., Ex. A to Defs. Resp. to Pl. Mot. to Am., at 104:13-15 (Dkt. 51-2); Wallace Dep. at 30:11-15; Rahmberg Dep. at 47:18-25.

Defendants also proffer evidence of their lack of intent to oppress Martin. First, Defendants highlight that Wallace has arranged advances on distributions to Martin from 200 Industrial Drive, LLC ("200 Industrial"), a business in which Martin owns a 50% interest. SAC ¶ 5; 200 Industrial Distributions, Ex. P to Defs. Resp. (Dkt. 99-17). Second, Defendants recognized E&E's inadvertent failure to increase its rent payments to 200 Industrial as provided in a 2011 lease amendment. 10/3/19 Letter, Ex. R to Defs. Mot. (Dkt. 99-19). When the oversight was discovered, E&E retroactively paid the deficiency, and 200 Industrial issued a distribution to

---

[10] Defendants hired Rahmberg to ensure that Wallace's compensation was commensurate to his peers, as E&E had been audited by the IRS six times. Wallace Dep. at 66:5-13. E&E was audited by the IRS in 1999 and was required to make adjustments to various categories of claimed expenses. Notices of Proposed Adjustments, Ex. M to Defs. Resp. (Dkt. 99-14). None of these adjustments related to Wallace's compensation. See id. And when the IRS requested documentation regarding Wallace's compensation for the tax years 2004 and 2005, it again made no adjustments to his compensation. See IRS Income Tax Examination Changes, Ex. N to Defs. Resp. (Dkt. 99-15).

Martin in the amount of $100,000.  Id.  Finally, Defendants note that Wallace has engaged in conflicted transactions insofar as he executed leases between E&E and 200 Industrial.  But according to Defendants, this dual role has allowed Wallace to exercise discretion in Martin's favor.  For example, when rents paid to the JAW Smith Entities were reduced in 2009 and in late 2017, rents paid to 200 Industrial remained unchanged.  Swanson Dep. at 260:11-261:12.

The evidence adduced by Defendants would support a finding that their actions were motivated by legitimate business reasons and not by an intent to interfere with Martin's shareholder interests.  However, given the countervailing evidence introduced by Martin, there are questions of material fact with respect to whether Defendants' acts were willfully unfair and oppressive within the meaning of MCL § 450.1489.  See Franks, 2019 WL 4648446, at *13; Blankenship v. Superior Controls, Inc., 135 F. Supp. 3d 608, 618 (E.D. Mich. 2015).[11]

Consequently, Martin's motion for summary judgment is denied.

## IV.  CONCLUSION

For the reasons discussed above, Defendants' amended motion for partial dismissal and partial summary judgment is granted in part and denied in part (Dkt. 75), and Martin's motion for partial summary judgment is denied (Dkt. 76, 88).

SO ORDERED.

Dated:  May 8, 2020                              s/Mark A. Goldsmith
        Detroit, Michigan                        MARK A. GOLDSMITH
                                                 United States District Judge

---

[11] Martin contends that, notwithstanding Defendants' justification that profits were required for E&E's growth, summary judgment is appropriate under Miller v. Magline, Inc., 256 N.W.2d 761 (Mich. Ct. App. 1977).  Pl. Reply at 5.  In that case, the Court of Appeals affirmed the trial court's determination that the majority shareholders' practice of distributing a percentage of the company's profits to themselves while simultaneously withholding dividends in favor of corporate growth was inequitable to the minority shareholders.  Miller, 256 N.W.2d at 770.  But the trial court's determination was made based on its evaluation of the defendants' credibility during trial, and not at the summary judgment stage.  Id. at 762.